HONORABLE J. KELLEY ARNOLD

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. CR07-5656-JKA-3 |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT NOEL'S MOTION RE OVERLENGTH MEMORANDUM** |
| **WAYNE JOHNSON, et al.,** | |
| Defendants. | |

  THIS MATTER came before the Court on motion of defendant Andrew Noel for leave to file a reply memorandum exceeding six pages as provided by Local Rules.  The Court, having considered the matter, finds that there is cause for granting the motion, given the complex nature of the matters raised in the motion and in the Government's brief in response to the motion.  Therefore, defendant's motion, docket entry no. 76, is granted.  The Clerk shall accept defendant's reply memorandum (docket entry no. 77) for filing.

  IT IS SO ORDERED.

  DATED this 17th day of January, 2008.

               /s/ J. Kelley Arnold
               Hon. J. Kelley Arnold

Order 1

Page 1: [1] Deleted                        Deborah Fiander                      12/09/2007 9:59:00 PM

## Introduction

The Court entered an Order requiring pretrial motions to be filed on or before January 18, 2008. It appears from the Grand Jury testimony of Government witness William Giles that some of his testimony was based upon the hearsay statements of others, was based upon statements obtained during custodial interrogation, constitutes conclusions of law or opinions based upon laws or plans inapplicable to defendant's conduct on the date of the alleged offense.

Because the evidentiary issues are complex, it might unduly prejudice the jury and unnecessary prolong trial if defendant simply objected at trial, as this would require the court to excuse the jury while argument is presented outside their presence. Consequently, defendant Andrew Noel brings this pretrial motion for a ruling in advance of trial whether certain such evidence or testimony should be suppressed or otherwise limited.


----------------------------------------Page Break----------------------------------------

## Argument

**1. <u>Statements made by defendant(s) while in custody of the Coast Guard are the product of a custodial interrogation and are not admissible</u>**

According to the Grand Jury testimony of National Marine Fisheries Service (NMFS) Agent William Giles, the Coast Guard was advised to detain the defendant until the arrival of NMFS enforcement staff:

> THE WITNESS: …The Coast Guard went out to investigate. When they approached out there, they saw two boats, three people in one boat, two people in a smaller boat. ..And the smaller boat looked like it had been—like it had—was tethered off to the whale…And then the Coast Guard made contact out there. And *they were also in communication with our agents*, not only John Haupt, but also one of the other supervisors in the Seattle office, Brad

> Venisch.  And *they were instructed to investigate and detain those individuals* until NOAA marine fishery investigators could arrive on scene (emphasis added).
>
> GRAND JUROR:  And the three that were on the larger boat have admitted nothing.
>
> THE WITNESS:  They did not want to talk to us.  Andrew Noel did not want to talk to us.  He made those statements to other folks.
> P. 35 lines 18 - 20.
>
> MR. OESTERLE:  If I could direct your attention to the *initial Coast Guard questioning of the three individuals,* do you recall those three individuals in the larger boat being asked who was shooting?
> P. 35 lines 21-25 (emphasis added).
>
> THE WITNESS:  Yes.  Coast Guard personnel when they first got on scene to investigate what were they doing out there asked them a series of questions.  Are you authorized to do this?  Who was doing the shooting? And each one of them said they were all doing the shooting, shooting the weapons.  So all five of them.  They were all doing the shooting.
> P. 36 lines 1-8.

It was apparent that at this point the Coast Guard had been instructed by law enforcement to investigate and to detain the defendants.  As the defendants were not free to leave, and the Coast Guard personnel were acting as agents of NMFS law enforcement, during the Government's case in chief neither the "series of questions" the Coast Guard personnel asked the defendants nor the defendants responses should be allowed or admitted as evidence.  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Since the Coast Guard was acting and the request and direction of NMFS law enforcement, they are subject to the same constitutional restraints upon custodial interrogations.

2.  **Testimony by Agent Giles as to what was said to him by Makah Whaling Commissioner(s) is inadmissible hearsay.**

According to the testimony of Agent Giles, defendant Noel went to a Makah tribal whaling commissioner and "asked to borrow some of the whaling commission's weapons":

> Through the investigation, it was found that on Thursday, September 6th, one of the members that was in the hunting party that was investigated, Andrew Noel, he went to a whaling commissioner and asked to borrow some of the whaling commission's weapons. And the commissioner he spoke to said, I'll have to check with the president of the whaling commission, which he did. And they got authorization to borrow the weapons.

P. 15 lines 13-20. Agent Giles also reported that the commissioner he spoke to said "I'll have to check with the president of the whaling commission." Agent Giles should be precluded from presenting hearsay testimony that defendant Noel asked to borrow weapons and from presenting hearsay testimony as to what may have been the whaling commissioner's response.. Fed. R. Evid. 802.

In a similar vein, witness Giles offered hearsay testimony that Defendant Noel asked and or was told by the harbormaster of Neah Bay that he could borrow a boat. P.17 lines 13 – 24. Witness Giles should also be precluded from presenting hearsay testimony that defendant Noel asked to borrow a boat and from presenting hearsay testimony as to what may have been the harbormaster's response. Fed. R. Evid. 802.[1]

3. **Agent Giles knowledge of defendant's use of a 50 caliber weapon is also based upon hearsay, rather than upon personal knowledge.**

---

[1] Hearsay testimony was also elicited from Giles regarding the alleged actions of the defendants and the whale *prior* to the arrival of the Coast Guard. His answers to questions regarding the activities prior to his arrival were based on "reports by witnesses". Witness Giles should therefore also be precluded from offering hearsay testimony from these "witnesses" regarding the actions of the whale or the defendants that occurred prior to his arrival.

Agent Giles should be precluded from testifying regarding a .577 caliber weapon allegedly used by defendant Noel. It is apparent that any information he received regarding this was based upon hearsay obtained from others:

> Q: [Y]ou mentioned three weapons. And you earlier said that two weapons were recovered off of the boats. Can you explain the discrepancy?
>
> A: Yes. Apparently they did not have ammunition for the .50 caliber weapon. So it was not taken out in the boats when they went on them Saturday. The .577 caliber, *from statements that we have heard from other people*, after they harpooned the whale on the morning of the 8th, the person, Andrew Noel, picked up the .577 weapon and fired a shot. And as he walked to the front of the boat to get up on the front of the small boat, he had an accidental discharge. That accidental discharge went through the top front of the boat and exited the bow of the boat just above the water lien. And that's a big heavy caliber weapon. So when that gun went off, it flew out of his hands and flew behind him, striking the other person in the boat in the head, and then fell overboard into the water.
>
> Q: Who was the person it struck?
>
> A: That was Wayne Johnson.

4. **Witness Giles should also be precluded from presenting testimony as to whether defendant's conduct was "authorized", as this is constitutes a conclusion of law.**

> Q: Have you or your agents had an opportunity to assess whether either the whaling commission, the Makah whaling commission, or the Makah tribal council had authorized any of this activity?
>
> A: Yes. We conducted interviews of the tribal council. And Mr. Ben Johnson, who is the president of the Council, and several others said that they did not authorize the hunt of the whale. They did not know about the hunt of the whale.

First, Giles' statement that the Tribal Council and the Makah whaling commission did not authorize the whale hunt is a *conclusion of law* and does not constitute factual testimony.

Second, testimony as to whether the defendant's conduct was authorized by the Makah whaling commission or by the Makah Tribal Council constitutes hearsay if presented through the testimony of Agent Giles.

**<u>Witness Giles should be precluded from offering legal conclusions or his legal opinion at trial regarding the defendant's right to hunt whales pursuant to the Makah Treaty of 1855 or the Whaling Convention Act.</u>**

A witness who is not an expert may not render an opinion on the ultimate legal issue in the case nor should they testify in the form of legal conclusions. During the course of seeking the Indictment, Agent Giles testified as follows:

> Q: Are you familiar with the Makah Treaty of 1855, familiar in the sense that are you aware it includes a provision for whaling?
>
> A: Yes, I am.
>
> Q: And so the Makahs do have a treaty right to conduct whaling?
>
> A: Yes, they do.
>
> Q: Are they entitle to exercise that right without compliance with the Marine Mammal Protection Act?
>
> A: No, they are not. They still have to meet the requirements of the act.

*See* Grand Jury Testimony, pg. 6 line 18, pg.7 line 4. Witness Giles' testimony that Makah tribal members do not have treaty right to conduct whaling absent compliance with Marine Mammal Protection Act is opinion on an ultimate issue in the case and calls for a legal conclusion. Ordinarily, a lay witness may testify only as to matters within

their personal knowledge. Fed. R. Evid. 602. Although a witness duly qualified as an expert witness may render legal opinions regarding the ultimate issues in the case, Agent Giles is not an expert on the Makah Treaty nor the Marine Mammal Protection Act. He was employed as a NMFS agent just *one week* before the facts in this case arose. As such his expression of opinions on the interplay between the Treaty of Neah Bay and the Marine Mammal Protection Act should be precluded.

6. **The Makah Tribe Gray Whale Management Plan is *ex post facto* as applied to defendant. It would be unduly prejudicial to allow testimony that defendant's conduct failed to conform to the Plan, since the "Plan" was not in effect on September 8, 2007.**

Throughout his Grand Jury testimony, Agent Giles presents testimony regarding whether Defendant's conduct was in conformity with the Makah Tribe Gray Whale Management Plan and a "Cooperative Agreement" between the Makah Tribe and the National Marine Fisheries Service. For example, the following testimony was presented to the Grand Jury:

> Q: Have you had an opportunity to review the Makah whale management plan and the cooperative agreement to determine what provisions are in place to ensure that the whale hunt, if it's authorized, is conducted appropriately?
>
> A: Yes, I have.
>
> Q: And was this whale hunt conducted in accordance with those procedures as far as you know?
>
> A: No, it wasn't.
>
> Q: Can you tell us in what ways it was not?

Witness Giles then goes on to testify as to various ways he perceived that the defendant's conduct was not it compliance with the plan.

> This was touched on by one of the Grand Jurors.
>
>> GRAND JUROR: …when the Makah were given the permissions and the approval to take the whale, or however many they were approved to take, when did that expire? Was there some expiration date to state you can take your five a year up until—
>>
>> THE WITNESS: I am not sure of the exact expiration date. But, yes, it did expire. I think it was 2002.
>>
>> MR. OESTERLE: Are you generally aware that the quotas given by the International Whaling Commission run a span of five years?
>>
>> THE WITNESS: Yes, they did.
>>
>> MR. OESTERLE: And it would have expired in 2002. Does that sound correct?
>>
>> THE WITNESS: I thought it was 2002 that it expired.

P. 36, line 14 – P.37, line 5.

The Makah Tribe Gray Whale Management Plan for the years 1998 to 2002 expired by its terms on December 31, 2002 (Exhibits A, B), as did its Cooperative Agreement with the National Marine Fisheries Service (Exhibit C), which expressly states as follows:

> This Agreement is in effect from the date of the second party's signature through December 31, 2002.

(Id., ¶ 7, pg. 3). Consequently, testimony that the defendant's conduct failed to conform to the Plan or the Agreement should be precluded. Although the Makah Tribal Council, realizing this oversight, readopted the Plan on September 26, 2007 as a law or ordinance of the Makah Tribe (Exhibit D), that occurred *after* the date of the offense alleged in this case. Consequently, the requirements of such Plan are *ex post facto* as applied to the defendant. U.S. Const., Art. I, Sec. 8. See also, 25 U.S.C. 1302 (9). In any event, since

neither the Management Plan nor Cooperative Agreement were in effect on September 8, 2007 the Government should not be allowed to present testimony regarding defendant's alleged "noncompliance" with them.

The allowance of testimony that defendant's conduct did not conform to such Plan which was not in effect on the date of the alleged offense is not relevant, Fed. R. Evid. 402. To the extent it has any relevance whatsoever to whether the defendant committed the alleged offenses, it is also unduly prejudicial, given that it was not a requirement applicable on the date of the offense alleged in the indictment. Fed. R. Evid. 403.

7. **Testimony regarding the whale's condition should be precluded or severely limited, as the as the government destroyed the evidence, which seriously hinders the defendant in examining the evidence presented against him and precludes him from having his own expert examine or testify regarding the condition of the whale.**

By its own admission, the Government sank the whale which the defendant allegedly hunted.

GRAND JUROR: Was the whale cut loose and allowed to sink, or was that an accident?

THE WITNESS: No. it was a decision was made to cut the whale loose.

GRAND JUROR: By—who made that decision?

THE WITNESS: I think it was somebody in NOAA that made that decision and relayed it out to the person on the scene.

Grand Jury Testimony of William Giles, pg. 35 lines 1-8.  An example of the prejudice to the defendant(s) created by the government's action in destroying the evidence is found on page 31 where witness Giles states in response to grand juror's question that he "believe[d]" that the .460 Wetherby "did the majority of the shots." Absent access to the whale's carcass, the defendant's are severely limited in their ability to present any forensic evidence to demonstrate which weapons were and were not and to what extent any of the weapons were used.  This evidentiary obstacle is observed by one of the grand juror's in his or her question on to witness Giles when they ask "And you have no evidence to say that the harpoons that were in the whale came from either the small boat or large boat."  Page 33 lines 21-23.

Defendant is perhaps most concerned about the potential for Government witnesses testifying regarding the length of time between when defendant first struck the whale involved in this case and when it died—a period of ten to twelve hours, and using this interval to assert that the whale must have suffered as a consequence of defendant's alleged conduct.  This is unduly prejudicial.  It was the Government's intervention, and the Government's lengthy holding of the whale while

## Conclusion

For the foregoing reasons, the above mentioned testimony or evidence should be precluded.  The Court should enter a pretrial order *in limine* limiting the Government from presenting it.

| Page 1: [2] Deleted | Deborah Fiander | 12/10/2007 9:35:00 AM |

Jack W. Fiander, WSBA 13116
Counsel for Defendant
Andrew Noel

1703 Creekside Loop
Ste. 110
Yakima, WA 98902-4875
(509) 969-4436

---

Exhibits A – D

Resolution 67-98 adopting Gray Whale Management Plan for years 1998-2002, 2 pgs.
Management Plan for years 1998-2002 (pg. 1 only).
Cooperative Agreement, pg. 3 only.
D.  Resolution 153-07 dated September 26, 2007.

---

```
02/03/1994  20:14   3606452314              UTL AND MAINT DEPT          PAGE  02
01/28/98    15:52   FAX 2064460962          ZIONTZ CHESTNUT

02/03/1994  20:14   3606452314              UTL AND MAINT ....

12-03-07  04:27PM   FROM-US Attorney Criminal Enterprises   206-553-4440   T-754  P.004/005  F-491

09/27/2007 THU 14:57  FAX 360 645 2788  MAKAH TRIBAL COUNCIL -> Ziontz      @002/003
```

Resolution No.: 153-07
Date Enacted: September 26, 2007
Subject Matter: Makah Gray Whale Management Plan

### RESOLUTION NO. 153-07 OF THE MAKAH TRIBAL COUNCIL

WHEREAS, the Makah Tribal Council is the governing body of the Makah Indian Tribe of the Makah Indian Reservation, Washington, by authority of the Constitution and By-Laws of the Makah Indian Tribe as approved on May 16, 1936, by the Secretary of the Interior;